| 94 | 741 |
| f97 | 127 |
| f97 | 474 |
| 94 | 741 |
| 99 | 84 |
| 94 | 741 |
| o100 | 213 |
| 94 | 741 |
| e102 | 187 |
| e102 | 728 |
| 94 | 741 |
| 110 | 172 |

# Wytheville.

## HICKS, TRUSTEE, *v.* ROANOKE BRICK CO. & OTHERS.

### July 1, 1897.

1. COURT OF APPEALS—*Jurisdiction—Amount in controversy.*—The amounts decreed against the appellant is the amount in controversy as to him, and not the several amounts decreed in favor of the appellees. If the aggregate of the sums decreed against the appellant exceeds $500 this court has jurisdiction, although the amount decreed to no one of the appellees amounts to $500.

2. APPEALS—*Dismissal for failure to give bond—Effect.*—The dismissal of an appeal for failure to give the appeal bond operates an affirmance of the decree of the lower court, without any consideration of it by this court.

3. EQUITABLE ASSIGNMENTS—*What constitutes.*—The mere promise of the assignee of a fund not in hand that he will, when and as he receives the the fund, pay a debt of the assignor, does not give an equitable lien on the fund, nor operate as an equitable assignment of it. To constitute an equitable assignment there must be an assignment of the fund or some definite portion of it, or an order on the person owing the money to the drawer, or holding funds belonging to him, so that the person owing the debt, or holding the fund on which the order is drawn, can safely pay the order, and is compellable to do so, though forbidden by the drawer.

4. MECHANIC'S LIEN—*Public buildings.*—A mechanic's lien cannot be claimed against public buildings erected by the State, or cities, or counties, for public purposes.

5. LIENS—*Furnishing materials for public buildings.*—Furnishing materials to be used by a contractor in the erection of a public improvement for a city, which materials are so used, does not give any lien on the fund due by the city to the contractor.

6. WRIT OF FIERI FACIAS.—*Lien on property not capable of being levied on— Percentage due a contractor.*—A writ of *fieri facias* against a contractor is a lien upon the amount due him by a city for work done between the date the writ was placed in the hands of an officer to be executed and the return day of the writ, although the amount be a *per cent.* of the

contract price reserved as security for the completion of the work, and is not payable until the work is completed. If the work is subsequently completed the lien may be enforced.

Appeal from a decree of the Hustings Court of the city of Roanoke, pronounced December 5, 1896, in a suit in chancery wherein the appellant and others were the complainants, and the appellees were the defendants.

*Reversed in part.*

After the original bill in this cause was filed, one of the complainants made a general assignment to the appellant, and the bill of review was filed by the original complainants and the appellant. The opinion states the case.

*Phlegar & Johnson* and *R. Randolph Hicks*, for the appellant.

*Wilson & Manson, Smith & King* and *Cocke & Glasgow,* for the appellees.

RIELY, J., delivered the opinion of the court.

The motion of appellees, Guggenheimer & Co., Williams, White & Co., and Chas. and H. M. Swab, to dismiss the appeal as to them, must, under the numerous decisions of this court relative to its jurisdiction, be overruled. I need only refer to some of them. *Gage* v. *Crockett,* 27 Gratt. 735; *Harman* v. *City of Lynchburg,* 33 Gratt. 37; *Fink, Brother & Co.* v. *Denny et als,* 75 Va. 663; *Duffy & Bolton* v. *Figgat,* 80 Va. 664; *Saunders, trustee* v. *Waggoner & Co.,* 82 Va. 316; *Hawkins* v. *Gresham,* 85 Va. 34; *Pitts* v. *Spotts & Gibson,* 86 Va. 71; *Craig* v. *Williams,* 90 Va. 500; and *Williams* v. *Clark,* 93 Va. 690. See also *Umbarger and wife* v. *Watts et al,* 25 Gratt. 167, and *Rodd* v. *Heartt,* 17 Wall. 354.

While the amount decreed to each of the said appellees is less than five hundred dollars, the claim of the appellant is

far in excess of that sum.    By the decision of the lower court in favor of the appellees, he was deprived of the greater part of about thirty-six hundred dollars of the fund, which he and L. H. Vaughan would have otherwise received.    This is the matter in dispute, the *amount in controversy* as to him, and gives this court jurisdiction as to all of the appellees.

It becomes necessary, therefore, to consider the claim of the appellant to the amount in controversy as against that of the several appellees to the sums decreed to them respectively.

On December 17, 1892, W. F. Patterson, in order to secure what he was owing to the Fidelity Loan and Trust Company, and to obtain the necessary means to carry on the work for which he had contracted with the city of Roanoke, made an assignment to said company of all moneys due and to become due to him from the said city for work done and materials furnished, and to be done and furnished, under his contracts with the city for public improvements.

On December 22, 1892, Edmund Didier and L. H. Vaughan filed their bill to set aside the assignment on the ground of fraud, and at the same time attached the moneys coming to Patterson from the city.    It was shown that the assignment, though absolute on its face, was only intended as a security for moneys already borrowed by Patterson from the company and for future loans and advances to enable him to perform his said contracts.    The court sustained the validity of the assignment and abated the attachment, and its decree, on appeal, was affirmed by this court.    *Didier et als* v. *Patterson et als*, 93 Va. 534.

On December 5, 1893, and while the appeal was pending in this court, the complainants filed their bill of review to the said decree and again sued out an attachment against the moneys due to Patterson from the city.    At the hearing of the bill of review, the court set aside and annulled as fraudulent the said assignment.

To this decree, Patterson obtained an appeal from this

court, but failing to perfect the appeal by giving the required bond, it was dismissed. By sec. 3475 of the Code, it is provided that "after the dismissal of an appeal, writ of error, or *supersedeas,* no other appeal, writ of error, or *supersedeas* shall be allowed to or from the same judgment, decree, or order." The effect of the dismissal of the appeal of Patterson was, therefore, without any consideration of it by this court, to operate as an affirmance of the decree of the lower court annulling the said assignment of fraud, and declaring it void. *Barksdale and Terry* v. *Fitzgerald,* 76 Va. 893, and *Cobbs, assignee* v. *Gilchrist,* 80 Va. 503.

It is under this state of the case that we come to consider the right of the several appellees to payment of their debts out of the moneys due by the city to Patterson as against the right of the appellant.

The respective claims of the Roanoke Brick Company, R. H. Angell, and Guggenheimer & Co., rest on very similar grounds, and will be first considered.

The petition of the Roanoke Brick Company, after referring to the assignment made by Patterson to the Fidelity Loan and Trust Company on December 17, 1892, and alleging that it was made for certain purposes, sets forth that the said company, acting for Patterson, on April 14, 1893, agreed in writing, which agreement was filed as an exhibit with the petition, that until further notice it would pay the brick company for brick furnished to Patterson for sewers then being constructed by him for the city of Roanoke. The agreement reads as follows:

"Roanoke, Va., April 14, 1893.

Roanoke Brick Co.,

    (Messrs. Adams, Bros. & Payne),

  Gentlemen:

    Until further notice, we will agree to pay you for brick furnished to Mr. W. F. Patterson for sewers now being built

in Roanoke city, as the money therefor is drawn from the city, as per the accounts rendered monthly, and approved by the said Patterson, less the 15 per cent., until such time when we receive the 15 per cent., when the same will be paid to you.

Yours truly,
FIDELITY LOAN AND TRUST COMPANY,
Assignee of W. F. Patterson,
By J. V. Jamison,
Sec. and Treas."

Upon the faith of this agreement, the brick company furnished to Patterson the brick, for which its claim in this case was asserted, and it contends that by virtue thereof it acquired an equitable lien on the money now due from the city to Patterson. There can be no doubt as to the doctrine that when, for a valuable consideration from the payee, an order is drawn upon a third person and made payable out of a particular fund, then due or to become due from him to the drawer, and is delivered to the payee, it operates as an equitable assignment *pro tanto* of the fund, and constitutes a lien upon it in the hands of him who owes the debt, or has possession of the fund out of which the order is made payable. Pomeroy's Eq. J., sec 1280; Story's Eq. J., sec. 1044; *Chesapeake Classified Building Ass. et al* v. *Coleman*, 94 Va. 433; *Brooks* v. *Hatch*, 6 Leigh 534; and *Switzer* v. *Noffsinger*, 82 Va. 521.

But a mere promise or agreement to pay a debt out of a designated fund, when received, does not give an equitable lien upon the fund, nor operate as an equitable assignment of it. Something more is necessary. To constitute an equitable assignment there must be an assignment or transfer of the fund or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though for-

bidden by the drawer.    Pomeroy's Eq. J., *supra;* 1 Jones on Liens (2d ed.), secs. 48, 50, 52; *Rodick* v. *Gandell,* 1 De G., M. & G. 763; *Clayton* v. *Fawcett's Adm'r,* 2 Leigh 19; *Eib* v. *Martin,* 5 Leigh 132; *Christmas* v. *Russell,* 14 Wall. 69; and *Trist* v. *Child,* 21 Wall. 441.

Patterson gave no order to the brick company on the city of Roanoke, which was to become his debtor for the construction of the sewers, for the latter to pay to the former for the brick it furnished to him    He did not assign or transfer to it for such purpose any part of the fund thus to become due to him.    The agreement, upon which it relies for the creation of an equitable lien in its favor on the said fund, is a mere agreement and promise by the Fidelity Loan and Trust Company to pay, when and as it collects from the city the money it would owe Patterson.    This did not operate as an equitable assignment.    It gave to the brick company no control of the fund, and the company acquired no lien on it, and further, the condition upon which the Fidelity Loan and Trust Company agreed to pay to the brick company never has been, and now never can be, fulfilled.    It only promised to pay out of the fund now in controversy when it received it.    The assignment having been annulled, its authority to collect or receive the money coming to Patterson from the city of Roanoke was thereby terminated.    The city could not thereafter pay the money to it, and it had no longer any right to receive it. The money never came to its hands, and the occasion when it was to pay the brick company has never arisen, and never can arise.

R. H. Angell relies upon a precisely similar agreement on the part of the Fidelity Loan and Trust Company to pay his claim for cement furnished to Patterson as that made by it with the Roanoke Brick Company, the only difference being that the agreement made with Angell was wholly verbal, while the promise to the brick company was in writing.    We have seen that the agreement with the brick company gave to

it no lien on the fund, and what has been said in regard to that claim applies in full force to that of Angell.

Both the brick company and Angell filed mechanic's liens against the sewers constructed by Patterson for the city of Roanoke, but the right to do so was not pressed at the hearing before us, and is clearly untenable.    It is contrary to public policy to allow a lien to be acquired on public property, and the mechanic's lien laws do not apply to public buildings or structures erected by States, cities, and counties for public uses, unless the statute creating the lien expressly so provides. *Manly Manf'g Co.* v. *Broaddus et al, ante* p. 547.    See also Boisot on Mechanic's Liens, sec. 208, and 2 Jones on Liens, sec. 1375.

It was also claimed for these two petitioners that they furnished the materials, which were necessary to enable Patterson to complete the work, and to entitle him to claim the fifteen *per cent.* retained by the city.    It is not questioned that they furnished the materials, and they were no doubt used in the completion of the sewers.    Still, this would not give these petitioners any lien on the money which the city had contracted to pay Patterson for the work.    1 Jones on Liens, sec. 50.

Much of what has been said in regard to the law of equitable assignments in discussing the claim of the Roanoke Brick Company is also applicable to the claim of Guggenheimer & Co.    This firm bases its right to have its account against Patterson paid out of the fund due him from the city of Roanoke on the following order:

"Roanoke, Va., October 28, 1893.
Mr. Jas. A. McConnell and Fidelity Loan and Trust Company.

Gentlemen:                                    .

I owe Guggenheimer & Co., of Lynchburg, Va., the sum of $266.34, with interest from 1st February, 1893, sub-

ject to a credit of $50 as of May 16, 1893.    Out of my esti-
mates which you will collect from the city of Roanoke, you
will please settle the above account, either in cash or city
warrants as you may receive them; this assignment being in-
tended to embrace said fund after the payment of the sums
necessary for the current expenses of the work.

                              W. F. PATTERSON.''

   In addition to the fact that the authority of the Fidelity
Loan and Trust Company to collect from the city the money
it owed Patterson was terminated by the annulment of the
assignment of December 17, 1892, and the condition on which
the order was to be paid was never fulfilled, it is very clear
that the order did not operate as an equitable assignment of
so much of the fund as was necessary to pay the claim of the
payee.    It was not drawn on the debtor of the drawer, nor
on any person holding funds belonging to him, and did not
place the fund or any part of it in the control of the payee.
1 Jones on Liens, sec. 50; and *Rodick* v. *Gandell*, *supra.*

   We are of opinion for the foregoing reasons that the court
below erred in decreeing payment of the claims of the said pe-
titioners.

   The respective claims of Williams, White & Co. and Chas.
and H. M. Swab are to be next considered.

   It appears from the record that these petitioners recovered
judgments on their claims against Patterson at the March
term, 1893, of the Corporation Court of the city of Roanoke.
Executions were issued on the judgments, and placed in the
hands of the sergeant of the city on April 14, 1893.    The
executions were made returnable to the first Monday in June,
1893, and were returned by the sergeant on June 5, 1893,
endorsed by him ''no effects.''

   At the time Williams, White & Co. and Chas. and H. M.
Swab filed their joint petition in this cause, there was due on

the judgment of the former the sum of $125, and on that of the latter the sum of $175, aggregating the sum of $300.

The record shows that between the time the executions went into the hands of the officer to be executed and the return day of the executions, the city of Roanoke was indebted to Patterson in the sum of $246.78, and also in the sum of $328.44, making $575.22, these sums being fifteen *per cent.* on the estimates for work done during the months of April and May, 1893, which the city, under its contract with Patterson, had the right to retain until the completion of the work. The amount so retained by the city and which constitutes a part of the debt now owing from it to Patterson is more than sufficient to pay the amounts due to the petitioners on their respective judgments. The question is have they a lien on the fund prior to that acquired by the appellants.

It is provided by statute that every writ of *fieri facias* shall, in addition to the lien it has under section 3587 of the Code on what is capable of being levied on under that section, be a lien, from the time it is delivered to the sheriff or other officer to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and before the return day of the said writ become possessed or entitled, and which is not capable of being levied on under the said section except as to exempted property, and except also as against certain persons. Code, sec. 3601. And this lien continues so long as the judgment can be enforced. Sec. 3602.

The executions of the petitioners were liens on the said amounts due by the city to Patterson, and continued to be liens thereon, although the same could not be enforced until the completion of the work. It was money to which he became entitled for work done while the executions were alive, and they were and continued to be, by the very terms of the statute, liens on the amounts to which he was thus entitled, though not enforceable until the money was payable. *Char-*

*ron & Co.* v. *Boswell et al,* 18 Gratt. 216; and *Trevillian's Ex'ors* v. *Guerrant's Ex'ors,* 31 Gratt. 525.

The lien of the appellant on the fund, according to the decree of November 18, 1895, was acquired on December 5, 1893. The lien of the executions, as has been seen, was prior thereto. The appellant was not within any of the exceptions of the statute. Code, sec. 3601; and *Puryear* v. *Taylor,* 12 Gratt. 401. The court, therefore, did not err in decreeing payment of the debts of these petitioners out of the fund due from Roanoke city to Patterson.

The decree appealed from must, however, be reversed for the error committed in decreeing payment of the claims of the other petitioners.

*Reversed in part.*