99   81
f99  419

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

FITZGERALD'S EXECUTRIX v. IRBY AND OTHERS.

JANUARY 17, 1901.

1. ATTORNEY AND CLIENT—*Percentage of Recovery—Lien on Land Purchased for the Debt by Client—How Secured.*—If a client contracts to pay his attorney a certain percentage out of a particular fund, which the attorney is to recover for him, the attorney has a lien on the fund for the amount of his fee, and if, in the process of collection, the client buys the land of the debtor for the amount of his debt, the attorney has an equitable lien on said land, to be paid in preference to all other debts of the client, which a court of equity will protect, at the instance of the attorney, either by withholding the deed, or by directing a conveyance to the client reserving a lien for the amount of the fee on the face of the deed in favor of the attorney.

2. CHANCERY PRACTICE—*Attorney's Lien—Decree for Deed to Client.*—Even after a deed has been directed to be made to a client, a court of equity may, for good cause, amend its decree so as to protect the interest of an attorney who has a lien upon the funds used to pay the purchase price of the land.

3. CHANCERY PRACTICE—*Attorney's Lien—Enforcement—Independent Suit.*—Where an attorney has a lien for money advanced his client to pay for land purchased in a pending suit, the better practice is not to enforce the lien in that suit, and thereby keep other parties in court who have no interest in that question, but to make a proper decree for the protection of the attorney, giving him leave to enforce it in an independent suit for that purpose.

Appeal from a decree of the Circuit Court of Henrico county, pronounced May 2, 1899, in a chancery suit therein pending under the style of *Irby & Others* v. *Williams' Adm'r & Others*, in which the appellant filed his petition.

*Reversed.*

The opinion states the case.

*A. A. Campbell* and *Daniel Grinnan*, for the appellant.

*Beverly T. Crump*, for the appellee.

PHLEGAR, J., delivered the opinion of the court.

John L. Irby and Thomas W. Epes, and Mary, his wife, employed J. P. Fitzgerald, an attorney at law, to bring suits against the representatives and sureties of F. C. Williams, deceased, who had been their guardian and the executor of their grandfather, to recover amounts due from him as such guardian and executor. They contracted to pay Mr. Fitzgerald for his services, a specified percentage of the amounts which might be collected, "to be paid out of the said collections."

Fitzgerald brought the suits in Nottoway county. They were removed to Henrico, and decrees were rendered in favor of the plaintiffs for considerable sums of money. Some money was paid Fitzgerald on these decrees, from which he retained his percentage thereof. The lands of F. C. Williams were sold on account of the decrees and were purchased by Irby and Epes and wife, who gave bonds without security for the purchase price; they being entitled to the whole purchase money after paying costs of sales. The court directed J. P. Fitzgerald as its commissioner to convey the lands to the purchasers, and to surrender the bonds which they had given. Several years afterwards, Fitzgerald filed his petitions in the suit, one against Irby and one against Epes and wife, asking to be made a party to the suit, setting up his contract with them, exhibiting itemized accounts of his claims against them, and averring that when the decree was entered directing him to surrender the sale bonds and make the deeds, he expected to collect a certain debt due by Thomas P. Bland, which had been transferred from F. C. Williams's administrator in part payment of the amounts decreed

to Irby and Epes and wife, and to get his fees therefrom; that he had recently learned that Irby and Epes had assigned said debt to others; that he had withheld the deeds so as to secure his fees and certain costs which he had incurred in selling the lands. He prayed that the court would set aside the decree directing deeds to be made, and that it would either sell the land for the amounts due him, or decree that the purchasers take deeds with liens retained on the lands for the amounts due him.

Demurrers and answers were filed to the petitions. The principal reliance was on the demurrers, the contention being that the claims should be litigated in an independent suit. The court overruled the demurrers, and directed a commissioner to settle the accounts between Fitzgerald and Irby, and between Fitzgerald and Epes and wife.

The report of the commissioner was in accord with Fitzgerald's claims, and was excepted to on the ground that the court had no jurisdiction of the matters, and that they should be determined in another suit. No exception was taken to the correctness of the account. Irby and Epes and wife prayed the court to appoint a commissioner instead of Fitzgerald to convey the lands to them.

The cause was heard in May, 1899, on the petitions, commissioner's reports and the exceptions thereto, when the court, being of opinion that it had no jurisdiction to consider the matters set up in the petitions, dismissed them, without prejudice to the rights of Fitzgerald's executrix to institute other proceedings. From that decree an appeal was allowed.

It has not been denied that Fitzgerald had an attorney's lien on the amounts which were decreed in favor of the appellees, but it is contended that there is no attorney's lien on land, and that when the court directed that the bonds which were given by the purchasers, should be delivered to them, and the amounts thereof were credited on the debts due from F. C. Williams's estate, the

debts to that extent became real estate, and the attorney's lien was destroyed.

It is certain that the amounts contracted for as fees belonged to Fitzgerald, that they were definitely fixed, that he had therefor a lien on the fund, that payment to him would have discharged the debtor *pro tanto*, that the court would have compelled the debtor to pay the amounts to him, and that the contract expressly provides for payment out of the fund.

The essential elements of an equitable assignment exist to such an extent that a court of equity should and will protect him. *Roanoke Brick Co.* v. *Hicks*, 94 Va. 741.

When Irby and Epes and wife used those amounts to pay for the land, they used a fund to which they were not entitled, and which was charged with a lien in favor of Fitzgerald. A court of equity will follow such a fund as far as it can be traced, and enforce the true owner's right against any property in which it may have been invested. *Cent. Nat. Bank* v. *Conn. Mut. Ins. Co.*, 104 U. S. 67; *Paxton* v. *Stuart*, 80 Va. 873.

In principle this case is like that of *Price's Adm'r* v. *Davis,* 88 Va. 939, where a trustee who had sold land under a decree of court, advanced, at the request of the purchaser, the amount of one of the purchase money bonds. Afterwards a deed was decreed and actually made to the purchaser. The trustee then filed a bill claiming a lien on the land for the bond he had paid, and his claim was sustained.

The personal representative of Fitzgerald is entitled to charge the lands purchased by J. L. Irby and T. W. Epes and wife with the amounts due to him which they used in paying therefor. If he had asserted his claim before the deeds were directed to be made, the court would undoubtedly have withheld the deeds until he was paid, or have ascertained the amounts due him and charged them on the lands, by proper provisions in the deeds.

The expectation that he would collect the Bland debt, and retain his fees from it, was a reasonable one, and sufficiently

accounts for his failure to assert his liens before the deeds were directed to be made.

The action of the appellees in disposing, or attempting to dispose, of the Bland debt justified the intervention by petition, if any other justification than his right to the money was necessary. As the deeds have not been made, we see no reason why the court should not have amended the decree which ordered them to be made and directed the commissioner to insert provisions charging the lands with the amounts due from Irby and Epes and wife, respectively.

The proceedings on the petitions were correct until the decree of May 2, 1899. The Circuit Court should have overruled the exceptions to the report, confirmed it, declared that the amounts due Fitzgerald's executrix were chargeable on the lands in the hands of the respective purchasers, as the first liens thereon, entered judgments therefor with costs, appointed a commissioner, instead of Fitzgerald, to make deeds to Irby and Epes and wife, in which the amounts decreed should have been charged on the land as prior liens to all other debts due by Irby and Epes and wife, and the deeds should have specified that the conveyances were made subject to such charges. No further relief should have been given on the petitions in this suit, but leave should have been given the personal representatives of J. P. Fitzgerald to enforce the decrees and the charges on the lands by independent suits.

Without deciding that the liens might not be enforced in the present suit, we consider it the better practice not to protract the original suit for that purpose, and not to keep in court the other parties who have no interest in the Fitzgerald claims.

The decree of May 2, 1899, is reversed and the cause remanded to the Circuit Court for Henrico county to be proceeded with in accordance with this opinion.

*Reversed.*